[Civ. No. 12189. Second Appellate District, Division One.—January 13, 1941.]

EARL C. KELSO, a Minor, etc., Appellant, v. BOARD OF EDUCATION OF THE CITY OF GLENDALE et al., Respondents.

W. L. Baugh and Elwood Bowles for Appellant.

Jennings & Belcher for Respondents.

WHITE, J.—In an action brought by the minor plaintiff to recover damages for the loss of an eye as a result of his falling against a century plant allegedly maintained in a negligent manner by the defendant school district upon the premises of a junior high school, the trial court, on a stipulated statement of facts, granted a nonsuit upon the ground that the verified claim presented to the defendant school board and school district was not filed within the time prescribed by law, and further, that such claim ''was not sufficient in law''. From the ensuing judgment that plaintiff take nothing by his complaint, this appeal is prosecuted.

The plaintiff sustained his injuries on November 19, 1936. On or about December 31, 1936, more than one month, but less than ninety days after the date of the injuries, there was presented and filed with defendants a verified claim for damages in words and figures as follows:

''Glendale Unified School District and Board of Education of
        the City of Glendale,
    ''411 East Wilson Street,
        ''Glendale, California
''Gentlemen:
    ''On the 19th day of November, 1936, at about 3:15 P. M., my son, Earl C. Kelso, a student at Wilson Junior High School in Glendale, while leaving school, fell against a century plant which was planted on the side of the pathway leading from the said school to the street. His right eye was punctured and was subsequently removed.

"My son resides with me at 130 North Cedar Street, Glendale, California.

"Claim is hereby made for Twenty-five Thousand Dollars ($25,000.00) as damages for the loss of an eye by said Earl C. Kelso.

"Dated this 31st day of December, 1936.

(Signed) CLAUDE KELSO."

By the general laws in effect at the time of the accident and when the claim was filed (Stats. 1931, p. 2475, sec. 1, Deering's Gen. Laws, [1937], Act 5149; see, also, Stats. 1931, p. 2476), it was provided as follows:

"Whenever it is claimed that any person has been injured or any property damaged as a result of the dangerous or defective condition of any public street, highway, building, park, grounds, works or property, a verified claim for damages shall be presented in writing and filed with the clerk or secretary of the legislative body of the municipality, county, city and county, or school district, as the case may be, within ninety days after such accident has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received."

There was also in force at all times herein pertinent Ordinance No. 1664 of the City of Glendale, providing in section 1 thereof in part as follows:

"No action shall be brought against the City of Glendale, or against any board, commission, officer or employee thereof because of any act omitted or committed by it or him within the scope of its or his employment by the City of Glendale, on any claim or demand for money or damages whether founded in contract or in tort, unless a verified claim in writing therefor shall have been presented to the proper board, commission or officer thereof, as provided by the charter of said City, and to the board, commission, officer or employee against whom it is intended to bring action, within one month from the time of the maturing of the obligation or occurrence of the injury upon which such claim or demand is based, and such claim shall have been rejected in whole or in part.

"If such claim is founded in tort, it shall set forth the name and residence address of the claimant, the nature, ex-

tent, date, place and time of injury, and an itemized statement of the damages claimed or demanded. . . . ''

■ It is urged by appellant that the general law allowing ninety days in which to file a claim is applicable in the present case, and that therefore the trial court erred in holding that his cause of action was barred because his claim was not filed within the one-month period prescribed by the ordinance. Respondents' position is that the ordinance is a valid exercise of authority granted by the city charter of the City of Glendale (Stats. 1921, p. 2204), which provides in article XI, section 5, that '' . . . No action shall be brought on any claim or demand for money or damages against the City or any Board, commission or officer thereof, until a demand for the same has been presented as provided in this charter or by ordinance and rejected in whole or in part''.

Respondents' contention in this regard cannot prevail. A city, by adopting a charter, becomes independent of general laws only as to ''municipal affairs'', and in matters of general state concern the general law is paramount. (*City of Pasadena* v. *Charleville*, 215 Cal. 384 [10 Pac. (2d) 745]; Const., art. XI, secs. 6 and 8.) And it has been held not only that the public school system is a matter of general concern (*Lansing* v. *Board of Education*, 7 Cal. App. (2d) 211 [45 Pac. (2d) 1021]; *People* v. *Mertz*, 2 Cal. (2d) 136 [39 Pac. (2d) 422]; *Esberg* v. *Badaracco*, 202 Cal. 110 [259 Pac. 730]; *Vallejo H. S. Dist.* v *White*, 43 Cal. App. 359 [185 Pac. 302]), but also that the question of the liability of municipalities, counties and school districts for tortious acts or omissions of their servants is not a ''municipal affair.'' (*Douglass* v. *City of Los Angeles*, 5 Cal. (2d) 123, 128 [53 Pac. (2d) 353].) In the last-cited case a claim for damages based on the defective condition of a street was filed with the board of public works and not with the city council as required by statute. It was held that such filing was ineffectual and the action could not be maintained. The court there said (p. 128):

''The important question of the liability of municipalities, counties and school districts for the tortious acts or omissions of their servants is a matter of general state concern, and not, as contended by the plaintiff, a municipal affair. As this point is now regularly raised we confirm the 'foreword' stated by this court in *Rafferty* v. *City of Marysville*, 207 Cal. 657

[280 Pac. 118], that it would be an anomalous situation if a city could, by adopting a freeholders' charter, exclude itself from the operation of a general law of the state imposing a liability on municipalities generally for the negligent acts or omissions of its servants in the maintenance of the public streets, on the theory that such city is independent of general laws in municipal affairs. The question of the safety of public ways is 'a matter of state concern, and the obligation of a city to make its highways reasonably safe for general use cannot be chartered away even though a municipality should attempt to do so'. (207 Cal. p. 665.)''

In *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.*, 28 Cal. App. (2d) 215 [82 Pac. (2d) 216], which was a suit against the city of Pasadena for damages resulting from the defective condition of a street, it was held that the act of 1931 allowing ninety days in which to file a claim, and not the requirements of the city charter, ''governs the situation''.

In *Esberg* v. *Badaracco, supra,* the Supreme Court, holding that the Board of Supervisors of the City and County of San Francisco was without power to modify the school budget prepared by the Board of Education, said:

'' . . . The school system of the state is a matter of general concern as distinguished from a 'municipal affair', as that term is considered in connection with charter cities. Article IX of the organic law of California provides for the establishment of a public school system. It is provided in section 1 of that article: 'A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral and agricultural improvement.' Section 5 of the same article provides that 'the legislature shall provide for a system of common schools. . . . ' Section 6 of the article provides that the legislature 'shall provide for' the levy of a 'city and county' tax by the board of supervisors for school purposes. By this article of the constitution the people of the state have made the school system a matter of state supervision, and judicial declarations to the same effect are numerous. . . . (Citing cases.)

''The effect of this framework of laws surrounding and supporting our public school system is that the acts of the legislature, within constitutional bounds, are controlling over conflicting provisions of freeholders' charters. . . . ''

■ Moreover, even assuming it to be a valid regulation in the case of claims against the City of Glendale or its officers, the ordinance in question does not by its terms cover the situation here, for the present suit is against the Glendale Unified School District, a corporate entity distinct from the municipal corporation of Glendale. (See *Ward* v. *San Diego School Dist.*, 203 Cal. 712 [265 Pac. 821], and the authorities therein referred to.) In the cited case, quoting from *Kennedy* v. *Miller*, 97 Cal. 429 [32 Pac. 558], it was said: " . . . The legislative declaration that every incorporated city is a school district does not import into the organization of the school district any of the provisions of the city charter, or limit the powers and functions which, as a school district, it has by virtue of the Political Code. The city is a corporation distinct from that of the school district, even though both are designated by the same name, and embrace the same territory. The one derives its authority directly from the legislature, through the general law providing for the establishment of schools throughout the state, while the authority of the other is found in the charter under which it is organized; and even though the charter may purport to define the powers and duties of its municipal officers in reference to the public schools in the same language as has the legislature in the Political Code, yet these powers and duties are referable to the legislative authority, and not to the charter. . . . "

To us the conclusion seems inevitable that so far as the provisions of the city ordinance impair or abridge the time fixed by the general law of the state for filing such claims, such provisions of the ordinance are invalid, because of their conflict with the state law. We further hold that the city is without power to shorten the time within which to file claims under the state law in matters of this kind, just as it is without power by charter or ordinance to extend the time fixed by the state law in a matter affecting school districts, which are, without doubt, of general state concern and not "municipal affairs".

■ Not only is the school district a separate entity from the city, but upon the authority of *Ward* v. *San Diego School District, supra,* it must be held that the members of the Board of Education are not "city officers", and hence, whether the suit be deemed one against the district or one against the members of the Board of Education, the city ordinance has no application.

■ It is next contended that the trial court erred in holding that appellant's claim "was not sufficient in law". In this contention appellant must be upheld. The requirements of the statute are that the claim specify the "name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received". These requirements are fully met by the filed claim here in question. But it is urged by respondents that the claim does not designate the injured plaintiff as the claimant, but rather purports to be a claim for damages sustained by his father, Claude Kelso, for the reason that the verification is by the father, who is described therein as the "claimant". The claim, say respondents, would support an action by the father for damages sustained by him alone, but affords no basis for an action by the son. This contention cannot be sustained. We think it is the claim itself that should be looked to, rather than the verification. The claim itself shows clearly enough that the son is the claimant. It is stated therein that the son was injured, his place of residence being given, and that "claim is hereby made for Twenty-five Thousand dollars ($25,000.00) as damages for the loss of an eye by said Earl C. Kelso". It would strain one's imagination to suppose that the board could have been led to believe that a claim for $25,000 was for damages sustained by the father alone. In making their concession that the claim as filed would have supported an action by appellant's father for such damages as he might have suffered personally as a result of the accident, respondents argue that in considering the claim for allowance or rejection they were only interested in whatever liability they owed to the father and were not concerned with any liability to the injured minor child. It is then admitted by respondents that the law requiring a claim to be filed as a condition precedent to bringing a suit against public entities, boards, commissions, etc., is simply to enable such public officials to make a proper investigation concerning the merits of the claim and to settle it without the expense of a lawsuit, if settlement should be shown to be proper. It is at once apparent that before the defendants could determine the presence or absence of any liability upon their part to the injured boy's father, they would of necessity have to determine the existence of any primary liability to the injured minor. If they owed the latter no obligation by

way of compensation, then of course, no liability to the father would attach.

It is the law that in the absence of an intention to mislead, a "substantial compliance with the charter requirements is sufficient". (*Sandstoe* v. *Atchison, T. & S. F. Ry. Co., supra.*) The claim filed in the instant case certainly meets the requirements enunciated in *Wagner* v. *City of Seattle*, 84 Wash. 275 [146 Pac. 621, Ann. Cas. 1916E, 720], and quoted with approval in *Uttley* v. *City of Santa Ana*, 136 Cal. App. 23 [28 Pac. (2d) 377], as follows: "When, therefore, there is no evident intention to mislead, but a *bona fide* attempt to comply with the law, the notice is sufficient in the absence of any evidence that it did in fact mislead." In cur opinion, the claim filed herein did not in anywise mislead respondents, but on the contrary, indicated without equivocation that it was filed for and on behalf of the minor child who sustained the injuries in question, and it certainly gave the respondents full opportunity to investigate the merits thereof. In the method pursued in the instant case in the filing of appellant's claim, the respondents were not prejudiced or misled in any manner, and the claim must therefore be held to be sufficient.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial.

Doran, J., concurred.

I concur in the conclusion reached. York, P. J.